IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

KARRIEM KEYS,

        Plaintiff,

v.

HANOVER FOODS CORP.,

        Defendant.

Civil Action No. 19-435-CFC

---

Seth J. Reidenberg, TYBOUT, REDFEARN & PELL, Wilmington, Delaware;
Evan L. Frank, ALAN L. FRANK LAW ASSOCIATES, P.C., Jenkintown,
Pennsylvania

    *Counsel for Plaintiff*

Curtis J. Crowther, Timothy J. Houseal, Lauren E.M. Russell, Barry M.
Willoughby, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington,
Delaware

    *Counsel for Defendant*

**MEMORANDUM OPINION**

May 4, 2021
Wilmington, Delaware

*[signature]*
COLM F. CONNOLLY
UNITED STATES DISTRICT JUDGE

Plaintiff Karriem Keys, who is black, alleges that Defendant Hanover Foods Corp. created a hostile work environment and terminated Keys's employment because of his race in violation of Title VII of the Civil Rights Act and the Delaware Discrimination Employment Act (DDEA). D.I. 8 ¶¶ 6, 17–32. Pending before me is Hanover's motion for summary judgment on all Keys's claims. D.I. 21.

## I. BACKGROUND

Keys was employed as a full-time machine operator at Hanover's Clayton, Delaware production facility from April 2016 until his termination on January 4, 2018. D.I. 23 ¶ 1; D.I. 26 ¶ 1; D.I. 8 ¶ 6. His position involved "operating equipment that put retail-sized boxes of waffles into larger shipping boxes, then stack[ing] those shipping boxes onto a pallet, where they were wrapped for storage or shipping." D.I. 23 ¶ 3; D.I. 26 ¶ 3.

On January 2, 2018, after Keys inspected his machine and was waiting on the production of waffle batter, co-worker Ron Fisher observed Keys lying on his back on the floor with his eyes closed. D.I. 25-1 at 57:16–59:21, 61:12. Fisher contacted Supervisor Greg Kirtley who then photographed Keys on his back on the floor with his eyes closed. D.I. 23 ¶ 8–9; D.I. 26 ¶ 8–9; *see also* D.I. 24 at A43.

Keys asserts that Fisher, who is white, is "very, very racist" but Keys does not allege in his Amended Complaint nor argue in his brief opposing summary judgment that he ever made a complaint to Hanover regarding any alleged racist conduct by Fisher. D.I. 23 ¶ 11; D.I. 26 ¶ 11; D.I. 24 at A10: 18–19. Keys also states that Fisher "would say something to the other white guys about black people" but "wouldn't say it around [Keys]." D.I. 24 at A10. Keys also admits that he had a history of interpersonal conflicts with Fisher. D.I. 23 ¶ 12; D.I. 26 ¶ 12.

Two days after the photograph of Keys was taken, on January 4, 2018, Hanover scheduled a meeting to inform Keys that he was being terminated as a result of the January 2 incident. D.I. 23 ¶ 13; D.I. 26 ¶ 13. During that meeting, Keys punched Kirtley and then said to him, "Get up, pussy." D.I. 23 ¶ 14–15; D.I. 26 ¶ 14–15. Kirtley later brought an assault charge against Keys as a result of the punching incident, and Keys pleaded guilty to offensive touching. D.I. 24 at A42, A45. Kirtley also obtained a restraining order against Keys. D.I. 23 ¶ 17; D.I. 26 ¶ 17.

Hanover's Employee Relations Manager, Shivonne Urbano, made the decision to terminate Keys. D.I. 24 at A47 ¶ 5; *see also* D.I. 28 at C7–C8. Keys has not alleged in his Amended Complaint nor argued in his brief that Urbano exhibited racial bias towards him. In the months prior to and after Keys's

termination, two employees—one white male and one black female—were terminated from Hanover's Clayton, Delaware facility for sleeping during work hours. D.I. 23 ¶ 22; D.I. 26 ¶ 22; D.I. 24 at A47 ¶¶ 6–7. Keys's position was eventually filled by Rodney Miles, a black employee, after the vacancy was publicly posted for bid per the collective bargaining agreement covering the position. D.I. 24 at A47 ¶¶ 8–9.[1]

Keys filed a discrimination charge with the Delaware Department of Labor and the U.S. Equal Employment Opportunity Commission. Both agencies issued notices of right to sue, and on March 1, 2019, Keys timely filed this complaint alleging violations of Title VII and the DDEA. D.I. 8 ¶ 5, 17–32.

## II.　LEGAL STANDARDS

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of

---

[1] Hanover cites the declaration of its Employee Relations Manager, Connie Nonemaker, as support for this assertion. D.I. 23 ¶ 23. Keys disputes that his position was filled by a black employee, but he cites only to a claim he made in his Delaware Department of Labor charge stating that Hanover "hired a white employee on the same day to fill his position." D.I. 26 ¶ 23. The non-moving party in a motion for summary judgment must present something more than "mere allegations, general denials or ... vague statements" to defeat the motion. *See Trap Rock Indus., Inc. v. Local 825, Int'l Union of Op. Eng'rs*, 982 F.2d 884, 890 (3d Cir. 1992). Here, Keys has not met this burden.

demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the burden of persuasion at trial would be on the non-moving party, then the moving party may satisfy its burden of production by pointing to an absence of evidence supporting the non-moving party's case, after which the burden of production then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–61 (3d Cir. 1989).

Material facts are those "that could affect the outcome" of the proceeding. *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). "[A] dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Id.* (internal quotation marks omitted). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). The non-moving party's evidence "must amount to more than a

scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Williams*, 891 F.2d at 460–61.

The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). "[T]he facts asserted by the nonmoving party, if supported by affidavits or other evidentiary material, must be regarded as true . . . ." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996). If "there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment." *Id.*

### III. DISCUSSION

#### A. Key's Disparate Treatment Claims

Keys asserts disparate treatment claims in violation of Title VII of the Civil Rights Act (Count I) and the DDEA (Count II). D.I. 8 ¶¶ 17–32. DDEA claims are analyzed under the same standard as Title VII claims. *See Hyland v. Smyrna Sch. Dist.*, 608 F. App'x 79, 83 n.5 (3d Cir. 2015) (instructing that "the standards under Title VII and the DDEA are generally the same, [therefore a plaintiff's] inability to survive summary judgment under Title VII dooms her claim under the DDEA").

5

Title VII discrimination claims are analyzed under the *McDonnell Douglas* burden-shifting framework. *See Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008). First, Keys must establish a prima facie case of discrimination by showing that: (1) he is a member of a protected class; (2) he was qualified for the position held; (3) he suffered an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of intentional discrimination. *Id.* If Keys can establish a prima facie case of discrimination, then the burden shifts to Hanover to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Id.* If Hanover can meet this burden, the burden shifts back to Keys to demonstrate that Hanover's proffered reason is a pretext for intentional discrimination. *Id.* "[T]he burden of persuasion remain[s] at all times with the plaintiff" to establish employment discrimination claims. *Sheridan v. E.I. DuPont de Nemours and Co.*, 100 F.3d 1061, 1066 (3d Cir. 1996) (citations omitted).

Hanover argues that summary judgment is warranted with respect to Keys's termination because (1) Keys has not adduced record evidence to show that his termination was motivated by racial bias, and (2) even if Keys made out a prima facie case of discrimination, he has failed to adduce record evidence that Hanover's proffered reasons for terminating him were pretextual.

### 1. Keys's Prima Facie Case

Hanover argues in its brief that Keys cannot prevail on his prima facie case because he cannot satisfy the fourth element of his prima facie case—that he was terminated under circumstances giving rise to an inference of intentional discrimination. D.I. 22 at 10. Keys asserts that he can show that his termination occurred under circumstances giving rise to an inference of discrimination "because he witnesse[d] his job being filled by a white employee on the same day he was terminated." D.I. 25 at 7. Hanover states that it hired a black employee to replace Keys, and in support of this assertion proffered a declaration from Connie Nonemaker, Hanover's Employee Relations Manager. Nonemaker states that "[Hanover's] records . . . reflect that [Keys's] position was filled by Rodney Miles, a [black] employee." D.I. 24 at A47 ¶ 8.

Keys argues that the Nonemaker declaration is inadmissible as hearsay because the declarant "has no foundation or knowledge to testify" and alternatively that, even if the Nonemaker declaration were admissible, "Mr. Keys'[s] statements under oath would create a genuine issue of fact." D.I. 25 at 7. Keys is wrong on both points. First, even if Nonemaker's declaration is hearsay, Hanover responded to Keys's argument in its reply brief by attaching records that directly support its assertion that Keys was replaced by a black employee. D.I. 28 at C9–C11. Second, Keys does not create a dispute of fact because he offers no evidence to

### 1. Keys's Prima Facie Case

Hanover argues in its brief that Keys cannot prevail on his prima facie case because he cannot satisfy the fourth element of his prima facie case—that he was terminated under circumstances giving rise to an inference of intentional discrimination. D.I. 22 at 10. Keys asserts that he can show that his termination occurred under circumstances giving rise to an inference of discrimination "because he witnesse[d] his job being filled by a white employee on the same day he was terminated." D.I. 25 at 7. Hanover states that it hired a black employee to replace Keys, and in support of this assertion proffered a declaration from Connie Nonemaker, Hanover's Employee Relations Manager. Nonemaker states that "[Hanover's] records . . . reflect that [Keys's] position was filled by Rodney Miles, a [black] employee." D.I. 24 at A47 ¶ 8.

Keys argues that the Nonemaker declaration is inadmissible as hearsay because the declarant "has no foundation or knowledge to testify" and alternatively that, even if the Nonemaker declaration were admissible, "Mr. Keys'[s] statements under oath would create a genuine issue of fact." D.I. 25 at 7. Keys is wrong on both points. First, even if Nonemaker's declaration is hearsay, Hanover responded to Keys's argument in its reply brief by attaching records that directly support its assertion that Keys was replaced by a black employee. D.I. 28 at C9–C11. Second, Keys does not create a dispute of fact because he offers no evidence to

### 1. Keys's Prima Facie Case

Hanover argues in its brief that Keys cannot prevail on his prima facie case because he cannot satisfy the fourth element of his prima facie case—that he was terminated under circumstances giving rise to an inference of intentional discrimination. D.I. 22 at 10. Keys asserts that he can show that his termination occurred under circumstances giving rise to an inference of discrimination "because he witnesse[d] his job being filled by a white employee on the same day he was terminated." D.I. 25 at 7. Hanover states that it hired a black employee to replace Keys, and in support of this assertion proffered a declaration from Connie Nonemaker, Hanover's Employee Relations Manager. Nonemaker states that "[Hanover's] records . . . reflect that [Keys's] position was filled by Rodney Miles, a [black] employee." D.I. 24 at A47 ¶ 8.

Keys argues that the Nonemaker declaration is inadmissible as hearsay because the declarant "has no foundation or knowledge to testify" and alternatively that, even if the Nonemaker declaration were admissible, "Mr. Keys'[s] statements under oath would create a genuine issue of fact." D.I. 25 at 7. Keys is wrong on both points. First, even if Nonemaker's declaration is hearsay, Hanover responded to Keys's argument in its reply brief by attaching records that directly support its assertion that Keys was replaced by a black employee. D.I. 28 at C9–C11. Second, Keys does not create a dispute of fact because he offers no evidence to

### 1. Keys's Prima Facie Case

Hanover argues in its brief that Keys cannot prevail on his prima facie case because he cannot satisfy the fourth element of his prima facie case—that he was terminated under circumstances giving rise to an inference of intentional discrimination. D.I. 22 at 10. Keys asserts that he can show that his termination occurred under circumstances giving rise to an inference of discrimination "because he witnesse[d] his job being filled by a white employee on the same day he was terminated." D.I. 25 at 7. Hanover states that it hired a black employee to replace Keys, and in support of this assertion proffered a declaration from Connie Nonemaker, Hanover's Employee Relations Manager. Nonemaker states that "[Hanover's] records . . . reflect that [Keys's] position was filled by Rodney Miles, a [black] employee." D.I. 24 at A47 ¶ 8.

Keys argues that the Nonemaker declaration is inadmissible as hearsay because the declarant "has no foundation or knowledge to testify" and alternatively that, even if the Nonemaker declaration were admissible, "Mr. Keys'[s] statements under oath would create a genuine issue of fact." D.I. 25 at 7. Keys is wrong on both points. First, even if Nonemaker's declaration is hearsay, Hanover responded to Keys's argument in its reply brief by attaching records that directly support its assertion that Keys was replaced by a black employee. D.I. 28 at C9–C11. Second, Keys does not create a dispute of fact because he offers no evidence to

support the conclusory statement he made under oath that a white employee filled his position. It is well-established that a non-moving party in a motion for summary judgment must present something more than "mere allegations, general denials or . . . vague statements" to defeat the motion. *See Trap Rock Indus., Inc. v. Local 825, Int'l Union of Op. Eng'rs*, 982 F.2d 884, 890 (3d Cir. 1992).

Keys's failure to identify similarly situated white employees who were not fired for sleeping on the job further supports the conclusion that there are no genuine issues of material fact concerning Keys's prima facie case. Nonemaker's declaration cited several instances where white and black employees had been fired for sleeping on the job. *See* D.I. 24 at A47 ("On September 19, 2017, Hanover's Clayton, Delaware plant terminated Bernard Miller, a [white] male, for sleeping on the job. . . . On August 28, 2018, Hanover's Clayton, Delaware plant terminated Shadena Sudler-Tumpkin, a [black] female, for sleeping on the job."). Keys did not present any evidence demonstrating that a white employee was found sleeping on the job but was not terminated. Because there are no genuine disputes of material fact concerning Keys's prima facie case, summary judgment is appropriate.

### 2.     Legitimate Non-Discriminatory Reason for Termination

Even if Keys did make out a prima facie case of discrimination, Hanover has offered legitimate non-discriminatory reasons for Keys's termination that Keys has

8

failed to demonstrate are pretextual. Hanover's burden in showing a non-discriminatory reason for terminating Keys is "relatively light" and its explanation for firing Keys must simply "permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994) (citation omitted). Hanover argues that it terminated Keys for two reasons: (1) because he was observed sleeping on the job and (2) because he physically assaulted his supervisor. Hanover's proffered reasons for termination are supported by record evidence and are nondiscriminatory. D.I. 26 ¶ 8, 14–17; D.I. 24 at A43; *see also* D.I. 28 at C7–C8. Accordingly, the burden rests with Keys to prove they are pretextual. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973).

### 3. Pretext

To discredit Hanover's proffered reason and demonstrate pretext, Keys must present "some evidence . . . from which a factfinder could reasonably either (1) disbelieve [Hanover's] articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of [Hanover's] actions." *Fuentes*, 32 F.3d at 764 (citations omitted). To satisfy the first prong, Keys

> cannot simply show that [Hanover's] decision was wrong or mistaken . . . [but] must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in [Hanover's] proffered legitimate

9

> reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that [Hanover] did not act for [the asserted] non-discriminatory reasons.

*Id.* at 765 (internal quotation marks and citations omitted). To satisfy the second prong and show that discrimination was more likely than not a motivating or determinative cause of Hanover's action, Keys "must point to evidence with sufficient probative force for a factfinder to make this conclusion; i.e. that [Hanover] has previously discriminated against him, that [Hanover] has discriminated against other persons within [Keys's] protected class or within another protected class or that [Hanover] has treated more favorably similarly situated persons not within the protected class." *Parker v. Verizon Pa. Inc.*, 309 F. App'x 551, 556–57 (3d Cir. 2009) (internal quotation marks and citation omitted).

Keys first attempts to discredit Hanover's reasons for terminating him by arguing that "he was not sleeping on the job, but rather . . . he was only praying during down time." D.I. 25 at 8. But "it is not enough for a plaintiff to show that the employer's decision was wrong or mistaken, because the issue is whether the employer acted with discriminatory animus." *Abramson v. William Paterson College of N.J.*, 260 F.3d 265, 283 (3d Cir. 2001). Therefore, whether Keys was actually sleeping is irrelevant since Keys has not shown any "implausibilities, inconsistencies, incoherencies, or contradictions" in Hanover's conclusion that Keys was sleeping when he was photographed by his supervisor "lying on his back

10

on the floor, with his eyes closed." D.I. 26 ¶ 8; D.I. 24 at A43; *see also Fawole v. Newark Beth Israel Hosp.,* 755 F. App'x 143, 146 (3d Cir. 2019) ("[R]egardless of whether [the employee] was sleeping during the relevant time, the pertinent question was whether the [employer's] decisionmakers believed he was asleep or otherwise derelict in his duties....").

Second, Keys argues that Hanover's stated reasons for his termination should be discredited because Hanover illicitly and retroactively relied on Keys's assault of his supervisor as justification for his termination. D.I. 25 at 5–6. But Hanover's records show that Keys was sent two separate termination letters, one detailing his termination for sleeping on the job and the second providing "additional information" that Keys's assault of his supervisor was "just cause for immediate discharge." D.I. 28 at C7–C8. In addition, both "fighting ... on company property" and "sleeping on the job, during work hours" are included as terminable offenses at Keys's facility. D.I. 28 at C6.

Keys's remaining argument shifts from discrediting Hanover's justifications to suggesting "that an invidious discriminatory reason was more likely than not a motivating or determinative cause of [Hanover's] actions." *Fuentes,* 32 F.3d at 764 (citations omitted). Keys claims that he "has submitted evidence that the Defendant's supervisors uniquely applied rules to black employees, made up violations by black employees, and cited black employees for infractions they

11

would overlook if made by another employee" and "has also submitted evidence that the Defendant's supervisors frequently made comments showing explicit animus towards black employees." D.I. 25 at 8–9. In support of both assertions, Keys cites two affidavits from former Hanover employees produced in *Sullivan v. Hanover Foods Corp.*, C.A. No. 18-cv-803-MN, D.I. 25, Exs. C, D, unsigned notes from a grievance meeting, D.I. 25, Ex. E, and Charges of Discrimination filed by two former Hanover employees (including the plaintiff in *Sullivan*), D.I 25, Ex. F, G. None of these documents reference Shivonne Urbano, the employee who fired Keys. Only the affidavits of Kisha Dickson and Pamela Joseph reference Keys's supervisor, Kirtley, and only Dickson's affidavit asserts that Kirtley engaged in racial discrimination. Dickson alleges that Kirtley "favor[ed] Hispanic employees over black employees" and that "[her] supervisors [were] more strict with black employees than other employees . . . [and] would make up violations by black employees." D.I. 25, Ex. C ¶¶ 2,3, 8. This conclusory allegation is not enough to meet Keys's burden to demonstrate pretext. *See Ness v. Marshall*, 660 F.2d 517, 519 (3d Cir. 1981) ("[A] party resisting [a summary judgment] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions."); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

In sum, Keys has presented no evidence that could permit a rational factfinder to conclude that Hanover terminated him for any reasons other than appearing to sleep on the job and physically assaulting his supervisor. Therefore, summary judgment is warranted on Keys's Title VII and DDEA claims.

B.  **Keys's Hostile Work Environment Claims**

Hanover's motion for summary judgment seeks to dismiss "Plaintiff's First Amended Complaint," D.I. 21, and Hanover's briefing confirms that it "requests that summary judgment be granted as to all Counts of Plaintiff's Amended Complaint," D.I. 22 at 13. In employment discrimination claims, "the burden of persuasion remain[s] at all times with the plaintiff." *Sheridan,* 100 F.3d at 1066 (citation omitted); *see also McDonnell Douglas,* 411 U.S. at 802 ("The complainant in a Title VII [case] must carry the initial burden under the statute of establishing a prima facie case of racial discrimination."); *Texas Dept. of Cmty. Affairs v. Burdine,* 450 U.S. 248, 256 (1981) ("[In the *McDonnell Douglas* analysis] [t]he plaintiff retains the burden of persuasion."). Therefore, Keys carries the initial burden for establishing a prima facie hostile work environment case.

To establish his prima facie case, Keys must produce evidence that "(1) he suffered intentional discrimination because of his [race]; (2) the discrimination was pervasive and regular; (3) it detrimentally affected him; (4) it would have detrimentally affected a reasonable person of the same protected class in his

13

position; and (5) there is a basis for vicarious liability." *Caver v. City of Trenton*, 420 F.3d 243, 262 (3d Cir. 2005). "To establish a prima facie case at summary judgment, the evidence must be sufficient to convince a reasonable factfinder to find all of the elements of [the] prima facie case." *Burton v. Teleflex, Inc.*, 707 F.3d 417, 426 (3d Cir. 2013) (internal quotation marks and citation omitted). "If a plaintiff fails to raise a genuine dispute of material fact as to any of the elements of the prima facie case, she has not met her initial burden, and summary judgment is properly granted for the defendant." *Id* (citation omitted).

Keys has failed this initial burden. The extent of Keys's allegations of a hostile work environment is the conclusory statement in two identical paragraphs in his Amended Complaint that "[t]he Defendant's conduct was severe and pervasive, substantially altered the terms and conditions of the Plaintiff's employment, and created a working environment so hostile that no reasonable employee would tolerate it." D.I. 8 ¶¶ 22, 30. Accordingly, summary judgment is warranted on Keys's Title VII and DDEA hostile environment claims. *See Trap Rock Indus.*, 982 F.2d at 890 ("The non-moving party in a motion for summary judgment must present something more than "mere allegations, general denials or…vague statements" to defeat the motion.).

## IV. CONCLUSION

Keys has not shown that he can prevail as a matter of law on his disparate treatment claims or his hostile work environment claims under Title VII or DDEA. Accordingly, I will grant Hanover's motion with respect to all counts of Keys's Amended Complaint.

The Court will issue an order consistent with this Memorandum Opinion.